STATE OF NORTH CAROLINA v. MICHAEL ODELL SIBLEY

No COA99-1206

(Filed 21 November 2000)

### 1. Evidence-videotape— not properly authenticated

The trial court erred in a prosecution for cocaine possession and possession of a firearm by a felon by admitting videotapes found in a search of the house in which defendant was arrested in which defendant was shown holding money, talking on a cell phone, holding a beer and handling weapons similar to those seized in the house. The only testimony purporting to authenticate the tape was evidence that the chain of custody had not been broken; the State did not call any witnesses to testify that the camera was operating properly or that the information depicted on the videotape was an accurate representation of the events at the time of filming.

### 2. Evidence— videotape—date—inadmissible hearsay

The trial court erred in a prosecution for possession of a firearm by a convicted felon (reversed on other grounds) in admitting a videotape with a date in a corner to prove possession of a weapon after the date of a prior felony conviction.

### 3. Evidence— statements on videotape—not adopted admissions

The trial court erred in a prosecution for possession of a firearm by a felon (reversed on other grounds) by admitting a videotape on which statements were made concerning defendant's guns. The circumstances under which the statements were made were not such that a denial by defendant would naturally be expected, and the statements were not adopted by defendant. N.C.G.S. § 8C-1, Rule 801(d).

Appeal by defendant from judgment entered 19 February 1999 by Judge Howard R. Greeson, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 18 September 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Lisa Granberry Corbett, for the State.*

*Clifford Clendenin O'Hale & Jones, LLP, by Walter L. Jones, for the defendant-appellant.*

**STATE v. SIBLEY**

[140 N.C. App. 584 (2000)]

EAGLES, Chief Judge.

The defendant was indicted and tried on charges of possession with intent to sell and deliver a controlled substance and possession of a firearm by a felon. Defendant was convicted of possession of a firearm by a felon and the lesser offense of possession of cocaine. Judge Greeson imposed an active sentence of 15-18 months for the possession of a firearm by a felon count and a sentence of 6-8 months incarceration for the possession of cocaine count, suspended on condition that defendant serve a 2 month split sentence and pay a $2,000 fine.

The evidence tended to show the following. On 16 January 1998, the Greensboro Police Department obtained a valid search warrant for 412 Spicewood Drive, Greensboro, a residence neither owned nor occupied by defendant. At approximately 9:00 p.m. the officers knocked on the door and announced their presence. Because no one answered, the officers "rammed" the door to gain entry. Defendant was found in a bedroom with James Simpson. There were seven people in the home at the time and all were arrested. The officers searched the home and found two rocks of crack cocaine under the bed where defendant was sitting. The officers could "not recall exactly if it was underneath the mattress or exactly underneath the bed." The officers also found several weapons in the home, two of which were a Faradon 9 millimeter semi-automatic pistol and a .380 caliber Llama semi-automatic pistol. The guns were found in the hallway, about 10 feet from the entrance to the room in which defendant and Mr. Simpson were located. Further, the officers seized two videotapes from the living room. From the defendant's person, the officers recovered $433 in cash, a Motorola cell phone and a pager.

The videotapes were admitted as substantive evidence at trial over defendant's objections. The first tape shows a date of 1/6/98 at the very beginning. It also shows people in a room that the officers identified as 412 Spicewood Drive. That tape shows defendant holding money, talking on a cell phone and holding a beer.

The second tape is labeled with titles "Monster Dog," "Eliminators" and "Devil Time." During the entire course of this tape a date, 1/10/98, appears in the bottom left hand corner. In this tape defendant is shown handling weapons similar to those seized. There were many comments made by other people on the tape about the defendant holding the guns. One person is shown on the videotape referring to "Mike's big old gun."

STATE v. SIBLEY

[140 N.C. App. 584 (2000)]

Defendant appeals on two grounds. First he argues that the trial court committed reversible error in allowing these videotapes to be admitted as substantive evidence and second, that the trial court erred in failing to dismiss at the close of the State's evidence based on the insufficiency of the evidence. Because we hold that these videotapes were not authenticated and contained inadmissible hearsay, we agree with defendant's first contention and reverse.

[1] Defendant's argument is that the State failed to lay a proper foundation for the admissibility of these confiscated videotapes. Upon laying of the proper foundation, videotapes are admissible in evidence for both substantive and illustrative purposes under G.S. § 8-97 (1981). *State v. Mewborn*, 131 N.C. App. 495, 498, 507 S.E.2d 906, 909 (1998). *State v. Cannon*, 92 N.C. App. 246, 374, 254 S.E.2d 604, 608 (1988), *rev'd on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990). In *Cannon*, this Court discussed how to lay a proper foundation for the admission of videotape evidence.

> The prerequisite that the offeror lay a proper foundation for the videotape can be met by: (1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed (illustrative purposes); (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape . . ."; (3) testimony that "the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing," (substantive purposes); or (4) "testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area 'photographed.' "

*Cannon*, 92 N.C. App. at 254, 374 S.E.2d at 608-09 (citations omitted). Defendant argues that there was no testimony by anyone present at the time of filming as to the "checking and operation" of the video equipment. In *Mewborn*, the State was able to offer testimony from three people that, when taken together, fulfilled the authentication requirement. There was testimony from the store owner as to the workings of the video equipment and testimony as to the chain of custody of the tape after it had been seized. *Mewborn*, 131 N.C. App. at 499, 507 S.E.2d at 909. Here, the only testimony purporting to authenticate the tape was evidence that the chain of custody had not been broken. The State did not call any witnesses to testify that the camera was operating properly or that the information depicted on the videotape was an accurate representation of the events at the time of filming.

The State argues that *State v. Rael* should guide us here. *Id.*, 321 N.C. 528, 364 S.E.2d 125 (1988). Our Supreme Court in *Rael* allowed pornographic videotapes and magazines seized from a defendant's home to corroborate the testimony of the victim; that the victim had been there and that the defendant forced the victim to view the tapes. *Id.* at 533, 364 S.E.2d at 129. The detective testified only that he seized the tapes pursuant to the defendant's consent, and that the tapes had not been altered since their seizure. *Id.* However, the defendant in *Rael* objected only on the grounds that the tapes and magazines were inadmissible character evidence. The question of the videotapes' authenticity was neither raised nor addressed by any of the parties. Thus, *Rael* does not control here. The *Cannon* test is the inquiry when determining admissibility of videotape evidence for its substance. *Cannon*, 92 N.C. App. at 254, 374 S.E.2d at 608. Accordingly, we hold that the videotapes were not properly authenticated and thus are not inadmissible for any purpose.

Since several other admissibility issues raised on appeal appear likely to reoccur upon retrial, we address them as well.

## 1. THE DATE APPEARING IN THE VIDEO

**[2]** The first hearsay objection is whether the trial court properly admitted the videotapes bearing the date, "1/10/98," appearing on the lower lefthand corner as substantive evidence. The evidence was admitted as substantive evidence to prove that defendant was in possession of a weapon after the date of his prior felony conviction. Defendant's conviction of possession of a firearm after the date of his felony conviction was based on this evidence alone.

Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." G.S. § 8C-1, Rule 801(c) (1992). A "statement" may be a written or oral assertion or nonverbal conduct intended by the declarant as an assertion. *State v. Satterfield*, 316 N.C. 55, 340 S.E.2d 52 (1986). An act, such as a gesture, can be a statement for purposes of applying rules concerning hearsay. *Id.*; *State v. Fulcher*, 294 N.C. 503, 517, 243 S.E.2d 338, 348 (1978) (decided before adoption of the North Carolina Rules of Evidence). Here, the declarant is unknown. There is no testimony as to the identity of the operator of the camera. The statement, that this video was filmed on 1/10/98, is offered for its truth, e.g., that defendant was in possession of a weapon on that date. "An assertion of one

other than the presently testifying witness is hearsay and inadmissible if offered for the truth of the matter asserted." *Livermon v. Bridgett*, 77 N.C. App. 533, 540, 335 S.E.2d 753, 757 (1985). 1 Brandis, North Carolina Evidence § 138 (2d Rev. Ed. 1982); G.S. § 8C-1, Rules 801 (c) and 802 (1983).

It is conceded by the State that the only evidence of defendant possessing a weapon after the commission of a felony is this videotape. The Virginia Court of Appeals addressed a similar issue in *Hanson v. Commonwealth*, 416 S.E.2d 14 (Va.App. 1992). In *Hanson*, the issue was whether the postmark on an envelope was admissible to prove the date upon which it was affixed. *Id.* at 20. The court held that "although a postmark is within the traditional definition of hearsay, it is admissible as an exception to the hearsay rule when used to prove the date on which the postal service affixed its postmark in the regular course of business." *Id.* at 21. The Virginia court held that using the postmark to prove the day upon which it was affixed is hearsay, admissible under the public records and business records exceptions to the hearsay rule. *Id.* Here, this videotape contains inadmissible hearsay for which there is no exception to the hearsay rule. We hold that the admission of this videotape bearing the date notation on this record was reversible error.

## 2. ADOPTIVE ADMISSIONS

**[3]** The second hearsay objection made by the defendant is that all other information with regard to the defendant on the videotape is inadmissible hearsay. The State argues that statements made by others on the videotape, e.g., "[t]his is Mike's big old gun" are admissible against Mr. Sibley because they are adoptive admissions. An admission may be express or may be implied from conduct. Rule 801 of the North Carolina Rules of Evidence states:

> (d) Exception for Admissions by a Party-Opponent. A statement is admissible as an exception to the hearsay rule if it is offered against a party and it is . . . (B) a statement of which he has manifested his adoption or belief in its truth . . . .

G.S. § 8C-1, 801(d). *FCX, Inc. v. Caudill*, 85 N.C. App. 272, 278, 354 S.E.2d 767, 772 (1987). A person may expressly adopt another's statement as his own, or an adoptive admission may be inferred from "other conduct of a party which manifests circumstantially the party's assent to the truth of a statement made by another person." *FCX, Inc.*, 85 N.C. App. at 278, 354 S.E.2d at 772. Adoptive admissions

fall generally into two categories—those inferred from an affirmative act of a party, and those inferred from silence or a failure to respond in circumstances that call for a response. *Id.* The State also argues that defendant's actions on the videotape were implied admissions that he possessed these weapons. Our Supreme Court in *State v. Spaulding*, 288 N.C. 397, 219 S.E.2d 178 (1975) stated:

> Implied admissions are received with great caution. However, if the statement is made in a person's presence by a person having first hand knowledge under such circumstances that a denial would be naturally expected if the statement were untrue and it is shown that he was in a position to hear and understand what was said and had the opportunity to speak, then his silence or failure to deny renders the statement admissible against him as an implied admission.

Id. at 406, 219 S.E.2d at 184; *see State v. Whitley*, 58 N.C. App. 539, 541, 293 S.E.2d 838, 839, *disc. rev. denied and appeal dismissed*, 306 N.C. 750, 295 S.E.2d 763 (1982). The videotape in question seems to be attempting to communicate some sort of intimidation or threat. To whom, or in what capacity is unclear; but it is clear that the circumstances under which these videotaped third person statements were made are not circumstances where a denial by the defendant would naturally be expected. *Id.* Additionally, we hold that the statements made by persons other than the defendant on this tape were not adopted by the defendant.

Since these videotapes were inadmissible because they were not properly authenticated, we hold that it was reversible error for the trial court to have admitted them. We further hold that the date, "1/10/98," on the video recording is inadmissible hearsay. Finally we hold that any statements made by out of court declarants on these videotapes are not admissible here as adoptive admissions by the defendant.

The only other evidence the State presented on the defendant's drug charge was that defendant was arrested in a home containing drugs, as well as seven other people, and the defendant had $433 in cash, a cell phone and a beeper on his person. The content of these tapes is so prejudicial that their improper admission infected the entire trial proceeding. Thus we need not reach defendant's remaining assignments of error. Accordingly the judgment in both cases is reversed and the cause remanded.

New trial.

Judges TIMMONS-GOODSON and FULLER concur.