TYSON, Judge.
 

 *149
 

 *698
 
 Michael Anthony Sheridan ("Defendant") appeals from judgments entered upon a jury's verdicts and convictions of four counts of first-degree sexual exploitation of a minor, two counts of statutory rape, and one count of sexual offense in a parental role. We find no error in part and remand for appropriate findings on Defendant's
 
 pro se
 
 speedy trial motion and the trial court's satellite-based monitoring ("SBM") determination.
 

 *699
 

 I. Background
 

 T.S. ("Tonya") met Defendant in March 2013, in the Raleigh neighborhood where they both lived. Tonya was fourteen years old and Defendant was forty-four. Defendant told Tonya about and introduced her to his daughter, who was around the same age. Tonya began "hanging out" with Defendant's daughter, and Defendant was "always" around.
 

 On 14 March 2013, Defendant asked Tonya if she wanted to "hang out" at his house the next day, while she waited for his daughter to get home. The next day, Defendant told Tonya his daughter was home, and she should come over.
 

 Once she entered his house, Defendant told Tonya they were alone. Defendant took Tonya into his bedroom, began kissing her, removed their clothes, and engaged in her first vaginal intercourse. Defendant and Tonya engaged in vaginal intercourse and fellatio "every day" thereafter, and within a week or two Tonya came to believe she was "in love" with Defendant.
 

 Tonya moved with her family to Hertford County in November 2013. Defendant continued engaging in sexual relations with Tonya after the move, when she returned to Raleigh with her mother to visit in the area. In June 2014, Tonya moved back to Raleigh and lived with Defendant. Defendant had told Tonya she could choose where she wanted to live after she turned sixteen years old. Tonya told her mother Defendant had offered her a job in Raleigh, and she was going to live with and work for him.
 

 Defendant and Tonya shared a bed when she moved in with him and immediately resumed their sexual relationship. Their near daily sexual activity occurred before and after Tonya's sixteenth birthday. Between 2013 and 2014, Tonya used Defendant's phone at his request to take four or five nude photographs of herself. Defendant purchased food and clothing for Tonya and gave her a bank card to use for expenses.
 

 On 27 October 2014, Defendant and Tonya argued. At Tonya's request, her grandmother dropped her off at her mother's boyfriend's house in Harnett County. Tonya's mother's boyfriend refused to allow Tonya to stay, and she returned to Defendant's house in a taxicab late that night.
 

 When she arrived, Tonya found Defendant naked in bed with another woman. Tonya requested Defendant to pay for her cab fare, but he refused. An argument ensued and the police were called. The cab
 
 *700
 
 driver retained all of Tonya's luggage and belongings for the unpaid fare. Tonya was arrested and taken to jail for failing to pay the cab fare.
 

 Tonya was released from jail at approximately 3:00 a.m. on 28 October 2014 and walked back to Defendant's home from the jail. The other woman was still at the house. Defendant and Tonya argued, and the other woman was driven home by Defendant's housemate. Tonya and Defendant slept in the same bedroom, but upon waking continued to argue, mainly about access to a phone. Defendant had provided Tonya with a phone when she had moved in, but he had taken it away from her.
 

 Tonya attempted to retrieve the phone while Defendant was in the shower, but Defendant allegedly began to physically assault her. Tonya grabbed a beer bottle and struck him on the head. Defendant escalated the assault, and when Tonya fell to the floor, she saw a knife and grabbed it. Defendant and
 
 *150
 
 Tonya grappled with the knife, but she regained control of it and stabbed Defendant. The assaults continued, and Defendant's mother called 911.
 

 Officers arrived and Tonya was transported to the hospital and underwent a sexual assault examination. Tonya told police officers that Defendant had raped her that day and had been sexually active with her prior to that occurrence. Tonya was placed into foster care. Soon after, Tonya learned she was pregnant again and gave birth to a son. She had previously aborted an earlier pregnancy. Subsequent DNA testing confirmed to a confidence interval of 99% that Defendant was the father of the child.
 

 Defendant was indicted for four counts of first-degree sexual exploitation of a minor, two counts of statutory rape, one count of sexual offense in a parental role, one count of indecent liberties with a minor, and of attaining habitual felon status. Defendant had retained counsel, but filed a
 
 pro se
 
 motion for a speedy trial on 14 April 2015, while being incarcerated in the Wake County Jail for approximately six months. Even though Defendant was represented by counsel, the trial court heard and denied the
 
 pro se
 
 motion.
 

 Defendant's case was called for trial on 20 March 2017. The jury's verdict found Defendant guilty of the four counts of sexual exploitation, two counts of statutory rape, and one count of sexual offense in a parental role. The State dismissed the charges of indecent liberties and Defendant having attained habitual felon status. Defendant was sentenced to two consecutive sentences of 317-441 months, one consecutive sentence of 33-100 months, and four consecutive sentences of
 
 *701
 
 96-176 months. He was also ordered to register as a sex offender and enroll in SBM for the remainder of his natural life.
 

 Defendant gave oral notice of appeal in open court, but did not enter written notice of appeal of the civil SBM order. Defendant has subsequently filed a petition for writ of certiorari to seek review of the civil SBM.
 

 II. Jurisdiction
 

 An appeal of right of Defendant's criminal convictions lies with this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444 (2017).
 

 III. Issues
 

 Defendant argues the trial court erred by (1) denying his motion to dismiss the charge of sexual offense in a parental role; (2) denying his motion for speedy trial; and, (3) denying his motion for mistrial. Defendant also asserts his counsel failed to provide effective assistance.
 

 IV. Motion to Dismiss
 

 Defendant asserts the trial court erred in denying his motion to dismiss the charge of sexual offense in a parental role. He argues the State presented insufficient evidence a parent-child relationship existed between Defendant and Tonya. We disagree.
 

 A. Standard of Review
 

 "Upon a defendant's motion to dismiss for insufficient evidence, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged ... and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Sweat
 
 ,
 
 366 N.C. 79
 
 , 84,
 
 727 S.E.2d 691
 
 , 695 (2012) (alteration original) (citation and internal quotation marks omitted). The evidence is to be considered and reviewed in the light most favorable to the State, including all reasonable inferences therefrom.
 
 State v. Powell
 
 ,
 
 299 N.C. 95
 
 , 99,
 
 261 S.E.2d 114
 
 , 117 (1980).
 

 "The evidence need only give rise to a reasonable inference of guilt in order for it to be properly submitted to the jury for a determination of defendant's guilt beyond a reasonable doubt."
 
 State v. Stone
 
 ,
 
 323 N.C. 447
 
 , 452,
 
 373 S.E.2d 430
 
 , 433 (1988). A motion to dismiss should only be granted when the evidence presented raises no more than a "suspicion of guilt."
 

 Id.
 

 *702
 
 Whether the State presented sufficient evidence is a question of law, which this Court reviews
 
 de novo
 
 .
 
 State v. Cox
 
 ,
 
 367 N.C. 147
 
 , 150-51,
 
 749 S.E.2d 271
 
 , 274-75 (2013) (citation omitted).
 

 *151
 

 B. Analysis
 

 Defendant was charged with violating
 
 N.C. Gen. Stat. § 14-27.7
 
 (a), which prohibits a person "who has assumed the position of a parent in the home of a minor victim [from] engag[ing] in vaginal intercourse or a sexual act with a victim who is a minor residing in the home."
 
 N.C. Gen. Stat. § 14-27.7
 
 (a) (2015). This statute was recodified as § 14-27.31, but the relevant language is virtually identical.
 
 2015 N.C. Sess. Laws 181
 
 , § 13(a).
 

 To survive a motion to dismiss, the State must have presented evidence that Defendant "had (1) assumed the position of a parent in the home, (2) of a minor victim, and (3) engaged in a sexual act with the victim residing in the home."
 
 State v. Oakley
 
 ,
 
 167 N.C. App. 318
 
 , 322,
 
 605 S.E.2d 215
 
 , 218 (2004) (citation omitted). Defendant asserts the factor at issue in this case is whether or not Defendant assumed a "parental role" in his relationship with Tonya.
 

 This Court has identified a "parental role" to include evidence of "emotional trust, disciplinary authority, and supervisory responsibility."
 
 State v. Bailey
 
 ,
 
 163 N.C. App. 84
 
 , 93,
 
 592 S.E.2d 738
 
 , 744 (2004). The most significant of these factors is whether the defendant and the minor "had a relationship based on trust that was analogous to that of a parent and child."
 
 Id.
 
 at 94,
 
 592 S.E.2d at 745
 
 . It is not necessary for the defendant to have maintained a romantic relationship with the child's parent or to exercise any legal rights over the child in order to be prosecuted under the statute.
 

 Id.
 

 Defendant argues Tonya was over sixteen years old and she engaged in a "consensual" relationship with him. However, the statute clearly indicates consent is not a defense.
 
 N.C. Gen. Stat. § 14-27.31
 
 (c) (2017). Further, this Court has found a parental role existed between a sixteen-year-old victim and a twenty-three-year-old defendant.
 
 Oakley
 
 ,
 
 167 N.C. App. at 319
 
 ,
 
 605 S.E.2d at 216
 
 . The sexual relationship began when the victim was sixteen, and he began residing with the defendant when he was seventeen.
 

 Id.
 

 at 319
 
 ,
 
 605 S.E.2d at 216-17
 
 .
 

 Both prior to and during the time the victim was living with him, the defendant had "paid for all of [the victim's] support ... including food, shelter, gifts and spending money."
 

 Id.
 

 at 323
 
 ,
 
 605 S.E.2d at 219
 
 . The defendant, Oakley, held himself out to be the victim's temporary
 
 *703
 
 custodian to the victim's parole officer.
 

 Id.
 

 Evidence at trial indicated the defendant was a friend of the family.
 

 Id.
 

 at 323
 
 ,
 
 605 S.E.2d at 218
 
 .
 

 Similar to the defendant in
 
 Oakley
 
 , Defendant paid for Tonya's care and support at a time she was legally unable to work and maintain herself. He also made numerous representations to others of his parental and supervisory role over Tonya: he indicated to police he was her "godfather," represented to a friend he was trying to help Tonya out and get her enrolled in school, and told his other girlfriends Tonya was his "daughter." While there was no indication Defendant was a friend of Tonya's family, there is evidence he initiated a relationship of trust by approaching Tonya with references to his daughter, who was the same age, and being "always" present when the two girls were "hanging out" at his house.
 

 Viewed in the light most favorable to the State, sufficient evidence of Defendant's exercise of a parental role over Tonya was presented to survive Defendant's motion to dismiss.
 
 See
 

 Powell
 
 ,
 
 299 N.C. at 99
 
 ,
 
 261 S.E.2d at 117
 
 . We find no error in the trial court's denial of Defendant's motion to dismiss this charge.
 

 V. Motion for Speedy Trial
 

 Defendant argues the trial court erred in denying his motion for speedy trial without addressing any of the
 
 Barker v. Wingo
 
 factors. We remand for appropriate findings.
 

 A. Standard of Review
 

 The appeal of a denial of a speedy trial motion raises a question of constitutional law, which is subject to
 
 de novo
 
 review.
 
 State v. Johnson
 
 , --- N.C. App. ----, ----,
 
 795 S.E.2d 126
 
 , 131 (2016) (citation omitted).
 

 B. Analysis
 

 The State argues this issue is not properly before this Court. Defendant filed his
 
 pro se
 
 motion for a speedy trial on 14
 
 *152
 
 April 2015. At that time, Defendant was represented by retained counsel. It is well established that a defendant cannot file motions on his own behalf and also be represented by counsel.
 
 State v. Williams
 
 ,
 
 363 N.C. 689
 
 , 700,
 
 686 S.E.2d 493
 
 , 501 (2009). Nothing in the record indicates Defendant's appointed trial counsel adopted his
 
 pro se
 
 motion:
 

 my client I believe wishes to address the Court prior to going further. He's indicated to me, as I heard, his own motions that he is wanting to make.
 

 *704
 
 The defendant in
 
 Williams
 
 argued the trial court erred by declining to rule on his
 
 pro se
 
 motions, including his
 
 pro se
 
 motion for speedy trial.
 

 Id.
 

 The Supreme Court found this refusal to rule on the defendant's
 
 pro se
 
 motion was not error.
 

 Id.
 

 Unlike in
 
 Williams
 
 , the trial court in the present case ruled on Defendant's
 
 pro se
 
 motion for speedy trial, stating, "the defendant's motion for a speedy trial is hereby denied."
 

 Where a trial court has specifically considered and denied a defendant's constitutional argument, this Court has granted review.
 
 E.g.
 
 ,
 
 In re Hall
 
 ,
 
 238 N.C. App. 322
 
 , 329,
 
 768 S.E.2d 39
 
 , 44 (2014) (concerning
 
 ex post facto
 
 violation);
 
 State v. Kirkwood
 
 ,
 
 229 N.C. App. 656
 
 , 665-66,
 
 747 S.E.2d 730
 
 , 736-37 (2013) (trial court's
 
 sua sponte
 
 ruling on double jeopardy issue gave this Court jurisdiction over the issue on appeal). Defendant's argument is properly before this Court. Because this is a question of law, subject to
 
 de novo
 
 review, we consider the matter anew.
 
 Johnson
 
 , --- N.C. App. at ----,
 
 795 S.E.2d at 131
 
 .
 

 A defendant is guaranteed the right to a speedy trial under the Constitution of the United States and the North Carolina Constitution. U.S. Const. amend. VI ; N.C. Const. art. I, § 18. The Supreme Court of the United States set out a four-factor balancing test to determine whether a defendant's right to a speedy trial under the Constitution of the United States was violated.
 
 Barker v. Wingo
 
 ,
 
 407 U.S. 514
 
 , 530,
 
 92 S.Ct. 2182
 
 , 2192,
 
 33 L.Ed.2d 101
 
 , 117 (1972).
 

 Reviewing courts are to consider the "[l]ength of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."
 

 Id.
 

 North Carolina adopted this four-factor balancing test to analyze purported speedy trial violations under our state's constitution.
 
 State v. Grooms
 
 ,
 
 353 N.C. 50
 
 , 62,
 
 540 S.E.2d 713
 
 , 721 (2000).
 

 The "length of the delay is not
 
 per se
 
 determinative" of whether a defendant's right to a speedy trial has been violated.
 

 Id.
 

 The Supreme Court of the United States has noted a delay becomes "presumptively prejudicial" as it approaches one year, which is enough to warrant further analysis.
 
 Doggett v. United States
 
 ,
 
 505 U.S. 647
 
 , 652 n.1,
 
 112 S.Ct. 2686
 
 , 2691 n.1,
 
 120 L.Ed.2d 520
 
 , 528 n.1 (1992).
 

 Here, the twenty-eight months' delay between Defendant's arrest and trial is enough to trigger further analysis. While the trial court was not obligated to consider Defendant's
 
 pro se
 
 motion for speedy trial while he was represented by counsel, because it did so, it erred by not considering all the
 
 Barker
 
 factors and making appropriate findings. The record on appeal is insufficiently developed for this analysis and determination to be made by this Court.
 

 *705
 
 "A full evidentiary hearing is required in order for the superior court to hear and make an appropriate assessment of Defendant's arguments. If the superior court ultimately concludes Defendant's right to a speedy trial was violated, the only remedy is dismissing the indictment and vacating those convictions."
 
 State v. Wilkerson
 
 , --- N.C. App. ----, ----,
 
 810 S.E.2d 389
 
 , 396 (2018). We remand to the trial court for a proper
 
 Barker v. Wingo
 
 analysis and appropriate findings.
 

 VI. Motion for Mistrial
 

 Defendant argues the trial court erred by denying his motion for mistrial when an expert witness opined that Tonya was neglected because her mother allowed her to stay with Defendant, "a person who had a history of criminality." We disagree.
 

 A. Standard of Review
 

 A trial court is required to call a mistrial "if there occurs during the trial an
 
 *153
 
 error or legal defect in the proceedings ... resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2017). Whether or not there has been "substantial and irreparable prejudice" is a matter that rests within the discretion of the trial court.
 
 State v. Mills
 
 ,
 
 39 N.C. App. 47
 
 , 50,
 
 249 S.E.2d 446
 
 , 448 (1978),
 
 cert. denied
 
 ,
 
 296 N.C. 588
 
 ,
 
 254 S.E.2d 33
 
 (1979). "[A]bsent a showing of abuse of that discretion, the decision of the trial court will not be disturbed on appeal."
 

 Id.
 

 B. Analysis
 

 Dr. Elizabeth Witman, the director of SAFEchild Advocacy Center, testified about Tonya's medical evaluation and diagnostic interview. When asked whether she had any concerns about Tonya's biological family, Dr. Witman replied:
 

 I did. We always try to look very carefully at those issues and it was my opinion sometimes I'm not describing all these motivation to why a child's been mission [sic] treated or neglected. It could be to a number of factors. It doesn't necessarily always mean ill intention, but I think because of her mother's homelessness and probably financial struggles and some other issues it was my opinion that she was neglected by being allowed to live with a person who had a history of criminality.
 

 Defense counsel immediately moved to strike, and the trial court sustained the objection and instructed the jury:
 

 *706
 
 Ladies and gentlemen, with regard to the last remark by this witness you are to disregard that remark and not consider it as part of your consideration towards a deliberation to a verdict in this case.
 

 The trial court denied defense counsel's motion for mistrial.
 

 "When the trial court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured."
 
 State v. Black
 
 ,
 
 328 N.C. 191
 
 , 200,
 
 400 S.E.2d 398
 
 , 404 (1991). Defendant argues some evidence "is so inherently prejudicial that its influence on the jury cannot be cured with an instruction to disregard it" and cites to
 
 State v. Hunt
 
 ,
 
 287 N.C. 360
 
 ,
 
 215 S.E.2d 40
 
 (1975), and
 
 State v. Aycoth
 
 ,
 
 270 N.C. 270
 
 ,
 
 154 S.E.2d 59
 
 (1967), for support.
 

 In
 
 Hunt
 
 , evidence of the defendant's "police record," and that he was on probation "for possession of marijuana and assault" was improperly introduced during cross-examination of a defense witness.
 
 287 N.C. at 372-73
 
 ,
 
 215 S.E.2d at 48
 
 . Shortly thereafter, court adjourned for the day.
 
 Id.
 
 at 373,
 
 215 S.E.2d at 48
 
 . Defense counsel moved for a mistrial at the beginning of court the next day.
 

 Id.
 

 The trial court denied that motion, but instructed the jury to disregard the testimony.
 

 Id.
 

 The Supreme Court found "the instructions then given were not specific as to the content of the challenged questions, and by this time the evidence must have found secure lodgment in the minds of the jurors."
 
 Id.
 
 at 376,
 
 215 S.E.2d at 50
 
 . The Court also limited its holding to the specific "circumstances of [that] capital case."
 
 Id.
 
 at 376,
 
 215 S.E.2d at 51
 
 .
 

 In
 
 Aycoth
 
 , during cross-examination, a State's witness revealed the defendant had been previously arrested on another charge and had been indicted for murder.
 
 270 N.C. at 272
 
 ,
 
 154 S.E.2d at 60
 
 . Defense counsel immediately objected and moved to strike, and the trial court allowed the motion and instructed the jury to not "consider" the previous statements.
 

 Id.
 

 Defense counsel moved for a mistrial after the State rested, which was denied.
 

 Id.
 

 The Supreme Court found "the incompetent evidence to the effect [the defendant] had been or was under indictment for murder was of such serious nature that its prejudicial effect was not erased by the court's quoted instruction."
 
 Id.
 
 at 273,
 
 154 S.E.2d at 61
 
 .
 

 Unlike in
 
 Hunt
 
 , the trial court immediately sustained the objection and instructed the jury "to disregard that remark and not consider it." Further, and unlike in
 
 Aycoth
 
 , the disclosure of Defendant's history of criminality was vague and did not suggest Defendant had previously been convicted of anything. Defendant has failed to show the trial
 
 *707
 
 court abused its discretion in denying Defendant's motion for mistrial. Defendant's arguments are overruled.
 
 *154
 

 VII. Ineffective Assistance of Counsel
 

 Defendant argues he was denied effective assistance of counsel when his attorney stated it would be "pointless" to proceed with a SBM hearing. This statement came after the prosecutor acknowledged the cumulative length of Defendant's sentences might make a SBM determination "a moot point," but was prepared to present evidence nonetheless. Because the trial court failed to comply with statutory mandates, we need not reach the merits of Defendant's argument.
 

 We initially address whether this issue is properly before this Court. Defendant did not file written notice of appeal for the SBM determination, as required by N.C. R. App. P. 3. Defendant filed a petition for writ of certiorari, requesting this Court to consider his arguments on the merits. This Court has previously granted petitions for certiorari when a defendant has given oral notice of appeal, but failed to comply with Rule 3 for an appeal of the SBM determination.
 
 State v. Dye
 
 , --- N.C. App. ----, ----,
 
 802 S.E.2d 737
 
 , 741 (2017) ;
 
 State v. Green
 
 ,
 
 229 N.C. App. 121
 
 , 128,
 
 746 S.E.2d 457
 
 , 464 (2013).
 

 A writ of certiorari "may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C. R. App. P. 21(a)(1). Defendant argues issuing a writ of certiorari is appropriate because the trial court erroneously concluded Defendant's convictions were "aggravated offenses" under
 
 N.C. Gen. Stat. § 14-208.6
 
 (1a) (2017). Aggravated offenses include those where a defendant (1) engaged in a penetrative sexual act with a victim of any age "through the use of force or the threat of serious violence" or (2) engaged in a penetrative sexual act with a child under twelve.
 

 Id.
 

 We agree, grant Defendant's petition, and issue the writ.
 

 When a defendant is convicted of a reportable offense under the sex offender registration scheme, the district attorney is required to present evidence at the sentencing phase of whether: (1) the defendant has been classified as a sexually violent predator; (2) the defendant is a recidivist; (3) the conviction is an aggravated offense; (4) the sexual act or rape was of a victim under thirteen and the defendant was an adult; or, (5) the offense involved physical, mental, or sexual abuse of a minor.
 
 N.C. Gen. Stat. § 14-208
 
 .40A(a) (2017).
 

 *708
 
 In this case, no evidence was presented prior to or to support the trial court's determination that Defendant would be subject to SBM for the remainder of his life. We vacate the order requiring Defendant to enroll in SBM for the remainder of his life, and remand for proper analysis and determination under
 
 N.C. Gen. Stat. § 14-208
 
 .40A.
 
 See
 

 State v. Davison
 
 ,
 
 201 N.C. App. 354
 
 , 364,
 
 689 S.E.2d 510
 
 , 517 (2009).
 

 VIII. Conclusion
 

 The State presented sufficient evidence of Defendant's parental role. The trial court did not err by denying Defendant's motion to dismiss the charge of sexual offense by substitute parent. The trial court did not abuse its discretion in denying Defendant's motion for mistrial.
 

 The trial court erred in failing to conduct a proper analysis of the
 
 Barker v. Wingo
 
 factors prior to denying Defendant's
 
 pro se
 
 motion for speedy trial. We remand this issue to the trial court for an appropriate analysis and findings.
 

 We vacate Defendant's SBM determination and remand for the trial court to conduct a proper determination in accordance with
 
 N.C. Gen. Stat. § 14-208
 
 .40A.
 
 It is so ordered.
 

 NO ERROR IN PART, VACATED IN PART, AND REMANDED.
 

 Judges ZACHARY and COLLINS concur.